## Chicago and Eastern Illinois Railroad Co. v. Mary Maloney, Adm'x.

1. RAILROADS—*What is a Train Within Sec. 90, Ch. 114, R. S.*—The provisions of Section 90, Ch. 114, Hurd's Rev. Stat., providing that, " No railroad corporation shall run or permit to be run upon its railroad, any train of cars, for the transportation of merchandise or other freight, without a good and sufficient brake attached to the rear or hindmost

car of the train, and a trusty and skillful brakeman stationed upon said car, unless the brakes are efficiently operated by power applied from the locomotive," was evidently intended to apply to trains running from one place or station to another, and has no application to a few cars being switched about in a freight yard.

2. Master and Servant—*Risks of Employment.*—When a person enters the employ of another he assumes the natural and ordinary risks incident to such service.

Trespass on the Case, for personal injuries. Trial in the Circuit Court of Cook County; the Hon. Frank Baker, Judge, presiding. Verdict and judgment for plaintiff. Appeal by defendant. Heard in the Branch Appellate Court of the First District, at the March term, 1898. Reversed and remanded. Opinion filed June 21, 1898.

W. J. Calhoun, attorney for appellant; W. H. Lyford, and J. B. Mann, of counsel.

Johnson & McDannold, attorneys for appellee.

## Statement.

The appellee's intestate, James Maloney, was, at the time of his death, employed by the appellant as a laborer in its freight yard in the city of Chicago, known as the "Thirty-third street" yard. The special duty of the decedent was to clean the snow and ice from the switches in this yard. He had been engaged in this employment but three days, including the day he was killed. The accident in question occurred about five o'clock in the evening of January 16, 1895. Maloney was working at a switch, as above stated, when a switch engine with a cut of fourteen cars came from the north, passed over the switch at which Maloney was working, and stopped a short distance south thereof. The locomotive was at the south end of the string of cars but headed north. It was the purpose of the crew of the cars to back the train through the switch where Maloney was working, to another part of the yard. As the train passed on its way south, one of the crew in charge of it dropped off the rear car at this switch, opened it, and after the train stopped he signaled the engineer to back

the train north and through the switch, and the train thereupon started, the locomotive pushing the cars ahead of it toward the north.

As the train passed over this switch in the first instance, going south, Maloney stepped aside to let it go by, and then returned to his work at the switch, with his back toward the train, his face to the north. The train proceeded back slowly, and coming up behind Maloney, struck him in the back. He seems to have caught on the brake machinery in some way, and was carried or dragged some distance before going under the car; finally his foot caught on a switch rod or some other obstruction, and he was thrown under the car. One or more of the cars passed over him, and he was so cut and mangled before the train was stopped that he died within a few minutes.

The appellee, as the administratrix of his estate, brings this suit, under the statute, to recover damages for the benefit of the next of kin. A trial was had, which resulted in a verdict for the appellee for $5,000. A motion for a new trial was overruled, judgment was entered on the verdict, and the defendant below prosecutes this appeal.

The declaration alleges negligence generally on the part of appellant in the management of its train in the city of Chicago; that the locomotive was at the rear end of the train pushing fourteen cars in the night time, there being no brilliant and conspicuous light on the first car, as required by an ordinance of said city; and that there was no watchman upon the first of said cars so being pushed backward.

Mr. Justice Horton, after making the foregoing statement, delivered the opinion of the court.

Whether or not there be negligence in a transaction, is usually a question of fact. Under the testimony and pleadings in this case there was no negligence on the part of appellant unless it be (1) because there was no bell rung or whistle blown on the locomotive; or (2) because the accident occurred in the night time and when there was no light on the first car; or (3) because there was no watchman on the

first (or front) car, and no light there, and no warning to deceased that a train was approaching.

First. It might, perhaps, be claimed that there was conflict in the testimony as to the sounding of a whistle, but there can be no doubt whatever, from the testimony, but that the bell was operated by steam and was being rung. Indeed, attorneys for appellee do not claim in their argument that there was any negligence in this respect.

Second. As to the point that there was no light on the front car when the accident occurred, which is alleged to have been in the night time, attorneys for appellee say that this was entirely abandoned at the trial, because not sustained by the evidence.

Third. It is contended by appellee that appellant was negligent in not having complied with the provisions of Section 90, Ch. 114, Hurd's Rev. Stat., which is as follows, viz.:

"No railroad corporation shall run or permit to be run upon its railroad, any train of cars, for the transportation of merchandise or other freight, without a good and sufficient brake attached to the rear or hindmost car of the train, and a trusty and skillful brakeman stationed upon said car, unless the brakes are efficiently operated by power applied from the locomotive."

Under the facts in the case at bar, this statute has no application. This section is not intended to control the making up of trains in the yard of a railroad company. The making up of a train by a railroad company in its yard at a terminus is not running "upon its railroad a train of cars for the transportation of merchandise or other freight." We can not concede that because the cars being switched in the appellant company's yard were loaded with coal, they were therefore then being used for the "transportation of merchandise" within the meaning of this statute. This section of the statute was evidently intended to apply to trains running from one place or station to another. A few cars being switched about in a freight yard are not a "train" in the sense that word is there used. And clearly this

statute does not in its language purport to apply to the front one of several cars which are being pushed backward in front of an engine. It states specifically that it applies to "the rear or hindmost car of the train." It does not follow that it might not, under some circumstances, be negligence to push cars in front of an engine in a switching yard without the presence of a trusty brakeman upon the first or front car.

The testimony does not show any wanton or reckless conduct on the part of appellant's employes. They, with the deceased, were employed in a very busy yard, and were at a switch which was in frequent use. The engine and cars in question had just passed the deceased, moving south. The witness, McGrath, who was engaged in the same kind of work as deceased, saw the cars moving back north; says he was looking out for them, as he did not want to get caught; that he was further from the front car than deceased was at the time; and that he shouted a warning to deceased.

When deceased was struck he was on the track with his back toward the approaching cars. A switchman was on the north or rear car when the engine and cars were passing south, but as that car passed the switch, he dropped off the car where deceased was standing, and told deceased to look out, as they were going to shove right back. The section of statute above quoted was practically complied with.

We have referred but briefly to some of the testimony. After a careful consideration of all the testimony in the case, in connection with the views expressed by the Supreme and Appellate Courts of this State, we are forced to the conclusion that the deceased lost his life rather from his own negligence than that of any employe of appellant.

But there is another fact to be considered. When the deceased entered the employ of appellant, he assumed the natural and ordinary risks incident to such service. He knew that switching engines and cars were running backward and forward over the tracks and switches where he was working. He assumed the risks to which he was thereby exposed—the dangers incident to the employment.

He undertook to observe all proper care for his own personal safety.

The judgment of the Circuit Court is reversed and the cause remanded.